TE–MOAK BANDS OF WESTERN
SHOSHONE INDIANS OF
NEVADA, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 326–A–1.

United States Claims Court.

July 8, 1991.

Frances L. Horn, Washington D.C., for plaintiffs.

James Upton, Washington D.C., with whom was Richard B. Stewart, Asst. Atty. Gen., Environmental and Natural Resources Div., for defendant.

## OPINION

SMITH, Chief Judge.

This case concerns certain trust funds which the federal government oversaw on behalf of the plaintiffs, the Te–Moak Bands of the Western Shoshone Indians of Nevada. Litigation on those issues has been ongoing for forty years. This case was before the Indian Claims Commission originally, and it retains that docket number.

Having reviewed the 24–page series of requested rulings contained in the Joint Submission of Requested Legal Rulings filed on February 22, 1990, the court is of the opinion that the procedure suggested by counsel is not feasible, in spite of the diligent effort expended by both sides. In light of the lengthy history of this matter, it is not surprising that counsel have different versions of nearly every requested ruling posed even though counsel have worked actively since February of 1990 to enter into either a settlement or at least a stipulated order. This opinion does, however, roughly follow the parties' outline of questions posed. The court believes this opinion reflects the issues relevant to the resolution of the Motion for Summary Judgment. This opinion sets forth the court's decision on the amounts to which plaintiffs are entitled in light of the legal rulings contained herein.

## FACTS

The facts have been set out more completely in the court's opinion of September 18, 1989. 18 Cl.Ct. 74 (1989). What follows is a brief account of the events leading to this opinion.

On August 10, 1951 the Te–Moak Bands of the Shoshone Indians filed a claim against the government before the Indian Claims Commission pursuant to the Indian Claims Commission Act, 60 Stat. 1049 (1946), *repealed by* 90 Stat.1990 (1976). *Inter alia*, the Te–Moak Bands alleged that the government misused funds and proceeds which the government held in trust for the Shoshones.

The Commission had all of the claims of the various Bands of the Shoshones under Docket Number 326. In 1957, however, the Commission severed the general accounting claims into separate causes of action for each Band. Thus, the Te–Moak Bands received Docket Number 326–A. In 1978, the Commission expired and Congress transferred jurisdiction to the Court of Claims. In 1982, the Court of Claims expired and Congress transferred jurisdiction to the Claims Court. On December 20, 1990, this court severed the case into three portions, each corresponding to a different issue. The matter before the court today, the accounting claims, became 326–A–1. The water claims became 326–A–2.[1] The interest claims became 326–A–3.[2]

---

1. The plaintiffs have appealed the court's February 11, 1991 order in 326–A–2 dismissing the water claims.

2. Judge Nettesheim ruled on the same legal issues in *White Mountain Apache Tribe of Arizona v. United States,* 20 Cl.Ct. 371 (1990). That case is presently before the Court of Appeals for the Federal Circuit. Since *White Mountain* involves

a substantially greater amount than in 326–A–3 and already is on appeal, the court and the parties agreed that it would be better to await the Federal Circuit's ruling on these legal issues. Thus, 326–A–3 is suspended pending that ruling.

## DISCUSSION [3]

### Test for Disallowance of Expenditures from Tribal Trust Funds

Plaintiffs claim that the government must prove that expenditures of tribal trust funds benefitted the tribe. Defendant claims that this standard effectively would require the government to act as an insurer or guarantor of the programs it undertakes on the Indians' behalf, and instead argues that the applicable test is whether the expenditure relates to the tribal interest.

The dispute over the proper standard stems, at least in part, from the statutory language intended to establish a trust relationship between the United States and the various tribes. 25 U.S.C. § 155 (1988). This problem is exacerbated by the common usage of the terms "benefit" and "relates to the tribal interest" in the cases relied on by both sides. It is this court's opinion that these cases do not answer the questions as posed by either side.

■ It is clear, and plaintiffs concede, that the government is not an insurer, and therefore the expenditures are not required to have resulted in actual benefits to the tribe. On the other hand, an expenditure is not allowable merely because it relates to a tribal interest if it was so imprudently spent as to waste the trust estate. Rather, the government must prove that at the time of the expenditures they were reasonably calculated to provide a benefit to the tribe. Admittedly, this is not a bright line test. The intention is to establish a framework in which the government must prove why it is appropriate to charge challenged expenditures against the tribe's trust funds.

### Burden of Proof

■ Both sides have directed the court to *Red Lake Band v. United States*, 17 Cl.Ct. 362 (1989), for guidance in determining the nature of the burden of proof in this case. While the court agrees with

Judge Bruggink's statements in that case, it should be noted that the parties in *Red Lake* supplied the court with dozens of boxes of documentary evidence. In contrast, plaintiffs' evidence in this case consists primarily of inspectors' reports and annual reports of the Bureau of Indian Affairs (BIA) superintendent, while defendant offers no additional evidence, but merely points the court to parts of plaintiffs' evidence. Having so stated, the court notes its agreement with Judge Bruggink that the obligation to establish the propriety of the expenditures rests with the government. *Id.* at 404 (relying on *Sioux Tribe v. United States*, 105 Ct.Cl. 725, 801–03, 64 F.Supp. 312 (1946)).

In response to the specific questions raised by the parties, the court will not say that as a matter of law, "the information contained in an official Inspector's Report or the official Annual Report of the BIA superintendent reporting problems constitute[s] a sufficient basis for shifting the burden of proof as to the propriety of an otherwise (on the face of the GSA Report) apparently proper expenditure of tribal funds." *See* Joint Submission of Requested Legal Rulings C–4(P). In the instant case, however, the court finds that those documents presented do provide a sufficient basis for shifting the burden to the government. The court further finds that, for the most part, the government has not provided any evidence to support the allowance of the expenditures. In fact, the government has been quite forthright about the fact that there really is no further evidence as to this issue. Thus, the plaintiffs prevail on most of their claims, based upon the reports which the inspectors prepared in the late 1800's.

## DAMAGES

### Indian Money, Proceeds of Labor (IMPL) Claim I

■ The claim in this category is a mixture of expenditures; those which are allowable, and those which are not. Plain-

---

**3.** The parties have stipulated to a number of legal issues. The following discussion covers those issues to which there is no agreement.

tiffs have met their initial burden of proof by documents supporting their claims. Thus, defendant must prove which expenditures were allocable to the tribe and which were agency expenditures. However, defendant has not introduced any evidence directed to this point. Therefore, the plaintiffs must prevail on this issue.

The plaintiffs claim $115,745.91. The defendant concedes: $32,693.07 (including $11,483.07 for unidentified items). The plaintiffs concede $206.00 for the tribal airplane. The defendant contests "Pay of agency personnel" ($61,481.16), and "Automobiles, vehicles maintenance and repair" ($21,571.68). Thus, the plaintiffs recover $115,539.91 plus approximately $240,824.95 in interest to July 1, 1986 (the interest attributable to the $206 is to be deducted from the $240,824.95). Interest on the total from July 1, 1986 also must be included.

## IMPL Claim II

■ It is not an inherent breach of fair and honorable dealings for the government to lend individual Indians money from the IMPL account, unless under the circumstances to do so would be wasteful. Even if the initial expenditures themselves are not wasteful, lending IMPL money to individual Indians without providing the reasonable means for succeeding, and thereby providing them the opportunity to reimburse the tribe, amounts to waste of the tribal monies. In the face of plaintiffs' evidence that such waste existed, defendant has not introduced any document to support a contradictory position.

Regarding the government's expenditures, the existence of any alternatives which today might be viewed favorably does not render the otherwise permissible expenditures improper or wasteful. Nor does the court believe that the law requires the government to be an insurer. However, having distributed money to the individual Indians, defendant had a duty to do what was reasonable in the circumstances to foster the success of those individual Indians and the money's repayment to the tribe.

Thus, plaintiffs recover $109,541.06 plus interest in the amount of $241,815.79 to July 1, 1986. The IMPL II claim has three components: reimbursable items; waste; and government concessions. The items which are reimbursable are the following: Agricultural aid, $20,502.83; Agricultural implements and equipment, $18,596.91; Livestock purchases, $14,964.26; and Livestock feed & care, $4,612.47. The items which constitute waste on the government's part and should be reimbursed include the following: Irrigation, 10.00; Medical expenses, $32,094.47; Pay of stockman, $1,244.25; Provisions, $3,397.54. Finally, the government concedes $14,177.60 for the pay of the mechanic. Interest from July 1, 1986 also is to be added to the sum of these amounts.

### Alleged Discrepancies in the 1968 and 1974 GSA Accounting Reports

■ Plaintiffs argue that because defendant has not accounted for the discrepancy between two GSA accountings, plaintiffs are entitled to recover the difference. Defendant argues that the discrepancy may be because the two accountings covered different time periods. Defendant claims this *possible* explanation raises a genuine issue of material fact.

Defendant's mere allegation of different periods is insufficient to raise a genuine issue. Plaintiffs recover $18,960.34 plus interest in the amount of $34,194.65 to July 1, 1986. Interest from July 1, 1986 to present is to be included as well.

### Alleged Mismanagement of Plaintiffs' Grazing Lands

■ Plaintiffs argue that the defendant failed to penalize trespassers on the plaintiffs' grazing lands, failed to enforce grazing permit requirements, and failed to take measures reasonably designed to prevent trespassing. Defendant claims there is a material issue of fact as to what would have been prudent for the government to do. It further argues that there is a different standard for government care of tribal funds as opposed to tribal tangible property.

The plaintiffs do concede only interest on this claim in the amount of $39,944.80. The court holds that the plaintiffs have provided insufficient proof that the government could have kept other parties off of the tribes' lands during the period in question. Nor could the court find that the government's inability to halt trespassers constituted waste. Therefore the court must deny the plaintiffs' motion for summary judgment on the issue of grazing rights. There is simply no basis for either party to prevail. However, since there is apparently no additional evidence available on this point as the court understands it, the court will dismiss this claim unless the plaintiffs request an opportunity to present evidence within sixty days.

## Miscellaneous Claims

The miscellaneous claims are all interest-related. They have been addressed by both parties' concessions. The original claim was for $4,320.92. The defendant has conceded: Reverse spending, $1,357.55; Delayed deposits and early withdrawals, $599.91. Plaintiffs concede interest lost on rents collected late, $2,363.46. Therefore, the plaintiffs recover $1,957.46.

## CONCLUSION

For the above-stated reasons, the court grants summary judgment for the plaintiffs, subject to the above qualifications. The amount which the government is to pay is listed below.

### Total Recovery

|                      | Amount        |   | Interest to 7/1/86 |
| -------------------- | ------------- | - | ------------------ |
| IMPL I               | $115,539.91   | + | $240,824.95        |
| IMPL II              | $109,541.06   | + | 241,815.79         |
| Report Discrepancies | $ 18,960.34   | + | 34,194.65          |

$244,041.31 + $516,835.39 = $760,876.70 (plus interest and Miscellaneous Claims).

Interest is to run from July 1, 1986 and is to be calculated according to the formula in 41 U.S.C. § 611 (1988). The "Miscellaneous Claims" of $1,957.46 are interest-related, and therefore, do not themselves merit payment of interest. The court orders the parties to attempt to resolve the amount of interest attributable to the $206 and file a memorandum on the amount within sixty days of this opinion. If counsel cannot agree to a figure, they are to file separate memoranda.